Mr. Farr and Mr. Meyer. The next case up for oral argument is 24-1443 United States v. Pierre Burnett. Mr. Gray, are you here? Mr. Gray? That's okay. Good morning. Good morning, Your Honors. My name is Stephen Gray. I'm here on behalf of the defendant, Pierre Burnett. We're here today to ask this court to reverse the district court's denial of our motion to suppress. There are three reasons why the court should reverse. Number one is that the district court relied heavily by stating repeatedly that Burnett was a fleeing suspect. He was not a fleeing suspect when he discarded or hid the packages in the bushes. Secondly, the police knew that the parcels belonged to Burnett. They'd seen him carrying one of the parcels earlier and a civilian citizen informed the police that the person who got out of the red 350 Dodge, I guess it was, or Ram, had taken those packages and put them in the bushes. The third reason, and probably the most important, was there was no urgency here. There was no exigency here. The police had custody of these packages. There was no reason not to get a search warrant. They should have gotten a search warrant. The Fourth Amendment, to allow the police to circumvent the Fourth Amendment, I think does great damage to it. The court's holding that... But if the property was abandoned, it's not subject to the Fourth Amendment protection. That's true. But the abandonment exception only applies if the chase or the pursuit was immediate and continuous. Every circuit that's had the opportunity to consider the issue has held that fact. Let me read it out of one of the cases. The hot pursuit exception to the warrant requirement only applies when officers are in immediate and continuous pursuit of a suspect from the scene of a crime. At the time that Mr. Burnett hid these packages in the bushes, the pursuit was neither immediate nor continuous, and had been broken off by the state police officer for safety concerns. When the police went to these apartments, they didn't even know that Burnett would be there. They only knew that he had some association to these apartments, and they arrived sometime after. When they did arrive, Mr. Burnett was not immediately out in the area. The packages were already secreted, and they could have just seized the packages and got a warrant. They didn't do that. They did it just for their own convenience. So to me, the fact that the police knew who placed the items out, they knew the items belonged to Mr. Burnett. They knew that. The area where he hid them was not an area which was ordinarily used by the public. It was accessible to the public, but it was hidden off the sidewalks. And the police wouldn't have even seen it had the civilian not come up and told them that Mr. Burnett hid these packages in the bushes. So the fact that Burnett was not a fleeing suspect because at the time that he hid the packages, the pursuit was neither immediate nor continuous. Mr. Gray, the court's finding that Mr. Burnett, as you say, was a fleeing suspect, is that a factual finding that we review for clear error? No. This court has to review this de novo. And the reason for that is that the facts of what Mr. Burnett did and what the police did, those are not in dispute. But for the court to find a legal finding that the property was abandoned because he was a fleeing suspect, that's a legal question. But the inference the court drew from the undisputed facts was that the chase that Mr. Burnett was still basically impacted by the chase because of the fact that the second apartment was a short distance away from where kind of the chase took place. And also by the positioning of the truck, which seems like it was parked kind of haphazardly and in haste. Those types of inferences that the district court drew, do we review those de novo too, or doesn't that fall under clear error? I think it has to be reviewed de novo because merely because the truck was parked across several lines, I mean this was a dually truck, whether it would even fit into a normal parking space is subject to some dispute. And so I mean even if he parked it haphazardly, there's no evidence that he believed that he was still being pursued. In fact, that's part of the facts that are not even disputed by the government. Mr. Burnett believed that he had successfully evaded the police. So his conduct afterwards, whether it was somewhat hurried or haphazard, that really doesn't enter into it. The question is, was this flight- Was it an objective test, though, not a subjective test? So the defendant's belief wouldn't matter? It's what an objective person would believe. The police officer has to take the position of what an objective person would believe, knowing the facts. So why would Mr. Burnett's belief here matter under the objective test? You just argued he believed he wasn't being chased anymore. Why does that matter? Well, because you cannot then say he parked his truck haphazardly because he was continuing his flight. If he believed that he had successfully evaded the police, then how he parked his truck is almost irrelevant. So, Mr. Gray, let's consider this hypothetical. Say that he wasn't being chased, right? Say the chase never happened, but the police know that he's affiliated with this particular address, and that Mr. Burnett, instead of throwing the bags into the bushes, let's say he just left it next to the bushes, okay? Or next to the front door of the building. In that case, would you agree that Mr. Burnett would not have a reasonable expectation of privacy with regard to those bags? I think it changes everything. Whether I would agree with that, I'm not sure. But the fact that he tried to hide them- That's my question. Do you agree with that or do you not agree with that? People can leave their luggage in a public area without losing their expectation of privacy, I think. You can do it in an airport, you can do it in a- Well, I think in that instance, right, I think the one fact might be that people typically come back for their luggage. But here we're talking, right? Isn't that one of the considerations? Well, he couldn't come back because he was under arrest. No, no, no. Say the black garbage bag or the black plastic bag, right? If he had just left that outside and then just gone into the house, would you agree with me that in that case, he would not have reasonable expectation of privacy, at least in the black bag? He would certainly have a lesser reasonable expectation of privacy and maybe none at all, but that's not what happened here. I think the fact that somebody was motivated to try to hide something, to try to secrete it from public view, showed that he was maintaining his privacy interest in those packages. And also, the police knew who put them there and the fact that they had not obviously been there for a long period of time. This orange backpack looked brand new in the photograph. It was clearly not covered with leaves or dirt or soiled in any way. And the other thing is, the police should have gotten a warrant. They had the opportunity to get a warrant. There was no exigency here. There was no urgency here. And for the court to say that he, you know, voided his expectation of privacy, the case that the district court cites to, which was Baczynski, which is this court's case, holds that a fleeing suspect who discards something loses their expectation of privacy. Well, he was not fleeing. To hold that he was fleeing puts us in the minority of the circuits. All the other circuits that have considered the issue says, in order for the exception to apply, the flight has to be both immediate and continuous. I see that I'm into my rebuttal time. Thank you very much. Thank you, Mr. Gray. Mr. Clark. Colin Clark on behalf of the United States. Abandonment is an exception to the Fourth Amendment. Warrant requirement abandonment occurred here as Mr. Burnett relinquished both his subjective expectation of privacy and the expectation of privacy that society would accept. I'd like to jump right into the hypothetical that Judge Lee posed. I think the Hayes case is on point. Now, it's a Second Circuit case. But in that case, we aren't sure who put it there. But the bag of drugs was put in a scrub brush area 65 feet from the back door, which the area was visible from the street in that case. And in that case, the Second Circuit found there was no expectation of privacy. It was right outside of the curtilage of the defendant's house. In that case, the police were there because there was a 911 call because of an overdose. The defendant was taken to the hospital. And so there was no flight in that case. And so we cited that case thinking about that same issue. As to whether it's a subjective or objective test, one of the questions you posed, Judge, it is an objective test. In Baczynski, this court looks solely to the external manifestations of the defendant's intent. And so the fact that Burnett believed he had people to run from, as shown by the haphazard parking of the truck, the fact that the bags were thrown in a poorly concealed area. And we know they were thrown because that's what the concerned citizen said. That's on page two of the district court opinion. And as to the fact that he was mid-flight, that is a finding of fact. That's not a mixed question of law. That's not a legal issue. The issue is what was he running. And the district court found, as a matter of fact, subject to clear error review, that yes, he was running. And it has to be running from the police, right? So Baczynski sets out three categories of abandonment. And those are not exclusive, although it looks, it scrutinizes cases that fall outside those three. I think that the best way to, and I'm sorry, your question was? Does he have to be running from the police? No, because I think that flight can occur where you discard a piece of property and you resolve any expectation of privacy, you relinquish any expectation of privacy you have to it. Although the paradigmatic example of it would be fleeing from police, which is what occurred here. In Baczynski, the fleeing category is characterized, as a quote, by the relinquishment that makes flight easier or to claim that the bag or object was never possessed. Generally, that's going to occur in a flight from police scenario. This discussion that there is some immediate and continuous flight rule, I don't recall that in any of the cases. Now, I could have missed it. I don't even believe that it was in the Whiteside case, which was the district court case from North Carolina. But even if it was in there, you have other cases like Gallardo, which is the New Mexico case we cited, where on page 10, they explicitly take up the idea of a hot pursuit and they say that it's superfluous, whether the pursuit was hot or cold. I think the best way to resolve the hot pursuit issue is to look at the Rem case, which is the case we said was most like this one. This was the case where the defendant jumps off the train at a stop that is not his. There is no fact in the record that suggests that when that man jumped off his train before his ticketed destination in Chicago, that he thought that there was any police presence there, that there was any police presence on the train. When he pushed by the old lady and walked away from the train, he wasn't being chased by anybody. Yet this court found abandonment because he placed the opaque bag on a public rack and left it. While he did try and return for the bag later on, that issue is not important to the Seventh Circuit's opinion there or here because the flow of information stops when the police officer opens the bag. The fact that he did try and come back later on is not relevant here or there. The concept that we are trying to establish is as old as the Book of Proverbs, chapter 28, verse 1, the wicked flee when no man pursueth. I wish I had the bright idea to use that, but that quote is actually used in the first footnote of California versus Hadari D, which is a case that we cited in our briefs. Given the district court's findings that the bags were poorly concealed, that the bags were discarded, that the bags were thrown, plus the fact that even though there was no particular finding on it, it's obvious from the record that Mr. Burnett did nothing to protect the bags. Unlike the Buszynski case, there was no promise to protect the bags from a third party. Unlike Whiteside, there was no promise to protect the bags from a third party. This court should find that he no longer had a reasonable expectation of privacy. The Whiteside case, which is the case they rely on the most, not only is there the protection of the four friends during the meeting in the McDonald's parking lot, the bags was actually hidden from view. There's a finding that the bag was not visible. If you look at the photographs that we submitted in evidence, you'll see that these bags were visible from anybody walking in that common area of the apartment complex. Now, not only did the concerned citizen watch him throw them, you have that walkway behind there with the dog waste station suggesting that this is a fairly high-trafficked area. I did want to point out that we found some confusion in how to apply the burden of proof, whether the burden was ours or theirs, because there are cases that kind of put the burden of proof on the other party, in our brief, we suggested that we ought to shoulder the burden on the ground that the idea of abandonment conceptually requires the defendant to have possessed a reasonable expectation of privacy at some point and then relinquished it. But then I reread cases like Ostrom, which we cite in the brief, it's from this year, and the Supreme Court case in Rawlings versus Kentucky. And in both of those cases, the court said, well, we look at the area and see if the defendant ever established a reasonable expectation of the privacy of the area that was searched. In the Rawlings case, it was a bag like this one. And in the Ostrom case, it was a car. There are two ways that this court could look at it. Either you take the expectation of privacy in the bag that he had and gave away, which we think we would succeed there, or you look at whether he ever established an expectation of privacy in the common area of that apartment complex. This court's cases have made clear that there is no expectation of privacy in the area where he threw the bags. And so as a thought experiment, if we were to ask the concerned citizen that pointed out the bags to the police, whose bags are those? He would likely point to the defendant. But then if we asked a second question to that concerned citizen, is this a private area? I think he or she would likely say no. So are you now saying it's your position that the defendant bears the burden of proving he had a reasonable expectation of privacy versus the government bearing that burden? I'm saying with candor to the court, I don't know. We said in the brief that we ought to shoulder the burden. Correct. And I think under that analysis, we stand by that. I simply say that— You seem to be switching your position. I'm not switching our position except to say that I don't think the court's cases make our position. They don't support or deny our position. And so I'm asking with respect for some clarity as to whose burden the proof would reside with in a case like this. Because I do think it's an important question that even though it does not resolve the outcome here, because I think we should succeed in either situation, I do think that it could depend— another case, it could depend on who held the burden. The other—I think that when we're looking at— this is a totality of the circumstances test, and I think there are three major factors that apply here. Flight, the knowing exposure of the bags to the public, and the lack of precautions taken. I think I've touched on all three of these. I think we've talked about hot pursuits versus cold pursuits. I haven't seen a legitimate way to distinguish REM. As to knowing exposure, what a person knowingly exposes to the public, even in his own home or office, is not subject to the Fourth Amendment protection. That's from California versus Greenwood. I see no way around that issue. Nor when you look at cases like Baczynski or Whiteside, where the defendant did take precautions to protect the privacy of the bag, I see none of those taken in this case. And for those reasons, I would ask that you affirm the decision of the district court. Thank you very much. Thank you. Mr. Gregg? If I could ask— Mr. Clark? Oh, yes, of course. Yes, Your Honor. If we decide or conclude that the burden does remain with the defendant to establish a reasonable explicit privacy with regard to the common areas, would that be contrary to our holding in Baczynski? Where we said the government has the burden of proof on abandonment? Baczynski put the burden of proof in that case on the government, but that case did not deal with a bag in a common area. In that case, the bag was entrusted to the possession of a third-party friend. And so the issue is whether he had a legitimate expectation of privacy in the third-party friend. He did. And then you can look at it from the government's point of view. Did those actions—did he take any actions to relinquish it? Burn the bag, and he chose not to. Did that burn the bag, relinquish the— And so I think Baczynski doesn't answer the question. Thank you. Thank you. Thank you, Mr. Clark. Mr. Grigg, your rebuttal. Your Honors, Mr. Burnett has never contended that he had an expectation of privacy in the common area. But that doesn't make any difference. People don't have an expectation of privacy in a bus station or the airport, yet does that give the government the right to take their luggage off the carousel where they do have an expectation of privacy and search it? Of course not. That is a red herring. Secondly, as far as the case law with regard to whether it's immediate or continuous, the case is United States v. Johnson, 256, Fed Third, 895. It's out of the Ninth Circuit. United States v. Johnson, 256, Fed Third, 895. If the district court wants to rely on the fact that Burnett somehow was a fleeing suspect when he hid these objects in the bushes, then they also have to show that it was a continuous and immediate flight, and it was not. Mr. Grigg, the case that you cited, was that addressing the hot pursuit exception to the Fourth Amendment, or was that addressing abandonment? No, it was addressing for the hot pursuit exception to the warrant requirement only applies when officers are in immediate and continuous pursuit of the suspect. But that's not necessarily what the government's relying on here, right? The government isn't relying upon the hot pursuit exception to the Fourth Amendment. Well, the district court relied on the fact that he was fleeing. And when you flee, I don't know of a cold flight. I only know of hot pursuits. But the Baczynski case put the burden of abandonment on the government, and they've not met their burden here. And the district court relied on the fact that it was relying on the first prong of the Baczynski holding, which was the first type is characterized by the presence of a fleeing defendant who relinquishes an object to make his flight easier because discarding the object might make it easier for him later to disclaim it. That's not what happened here. We did not have a fleeing defendant. And finally, the government's problem seems to be with the care that was taken to hide these things because it was done in a haphazard way or not to their standard. That does not negate the fact that Burnett was trying to hide these things. Whether he did so poorly or not is not relevant. He was trying to hide them when he put them in the bushes. OK. Thank you, Mr. Gray. Thank you, Your Honor. Thanks to both counsel. The court will take the case under advisement.